**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Iesha Salgado, | ) | No. CV 20-00024-TUC-LAB |
| | ) | |
| Plaintiff, | ) | **ORDER** |
| | ) | |
| vs. | ) | |
| | ) | |
| Commissioner of Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

The plaintiff filed this action for review of the final decision of the Commissioner for Social Security pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). (Doc. 1, p. 1) In his response brief, the Commissioner moves that the court remand for further proceedings. (Doc. 21)

The Magistrate Judge presides over this case pursuant to 28 U.S.C. § 636(c) having received the written consent of both parties. *See* FED.R.CIV.P. 73; (Doc. 12)

The ALJ in this case erred when he found that Salgado was not disabled because she could perform work that exists in "significant numbers." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). The case is remanded for further proceedings.

PROCEDURAL HISTORY

On September 11, 2017, Salgado constructively filed applications for disability insurance benefits pursuant to Title II of the Social Security Act and supplemental security income pursuant to Title XVI. (Tr. 13) She alleged disability beginning on December 2, 2016, due to

bipolar disorder, schizophrenia, attention deficit hyperactivity disorder, and mood swings. (Tr. 13, 267)

Her applications were denied initially and upon reconsideration. (Tr. 13) Salgado requested review and appeared with counsel at a hearing before Administrative Law Judge (ALJ) Peter Baum on July 24, 2019. (Tr. 43) The ALJ received testimony from Salgado and vocational expert Freeman Leeth. (Tr. 42, 43, 68)

Salgado testified that she worked for two or three months at Café 54, which is an "employment training program for adults in mental health recovery." (Tr. 50-51); https://www.cafe54.org/ After that, she worked in an elementary school cafeteria. (Tr. 55-58); (Tr. 549) She explained at the hearing that she can work part-time but she has trouble maintaining attention. (Tr. 67)

In his decision, dated August 5, 2019, the ALJ found that Salgado was not disabled because "jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity." (Tr. 22) Based on the testimony of the vocational expert, he concluded that she could work as a bakery worker (DOT# 524.687-022) with 3,000 jobs nationally, a garment bagger (DOT# 920.687-018) with 5,000 jobs nationally, or a sorter (DOT# 734.687-042) with 2,500 jobs nationally. (Tr. 22)

Salgado appealed, but on November 15, 2019, the Appeals Council denied review making the decision of the ALJ the final decision of the Commissioner. (Tr. 1-5) Salgado subsequently filed this action appealing that final decision. (Doc. 1) On August 24, 2020, the Commissioner filed a combined response and motion to remand for further proceedings. (Doc. 21)

CLAIM EVALUATION

Social Security Administration (SSA) regulations require that disability claims be evaluated pursuant to a five-step sequential process. 20 C.F.R. §§ 404.1520, 416.920. The first step requires a determination of whether the claimant is engaged in substantial gainful activity.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  If so, then the claimant is not disabled, and benefits are denied.  *Id.*

If the claimant is not engaged in substantial gainful activity, the ALJ proceeds to step two, which requires a determination of whether the claimant has a severe impairment or combination of impairments.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  In making a determination at step two, the ALJ uses medical evidence to consider whether the claimant's impairment significantly limits or restricts his or her physical or mental ability to do basic work activities.  *Id.*  If the ALJ concludes the impairment is not severe, the claim is denied.  *Id.*

Upon a finding of severity, the ALJ proceeds to step three, which requires a determination of whether the impairment meets or equals one of several listed impairments that the Commissioner acknowledges are so limiting as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); 20 C.F.R. Pt. 404, Subpt. P, App.1.  If the claimant's impairment meets or equals one of the listed impairments, the claimant is presumed to be disabled, and no further inquiry is necessary.  *Ramirez v Shalala,* 8 F.3d 1449, 1452 (9th Cir. 1993).  If the claimant's impairment does not meet or equal a listed impairment, evaluation proceeds to the next step.

The fourth step requires the ALJ to consider whether the claimant has sufficient residual functional capacity (RFC)[1] to perform past relevant work.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  If yes, then the claim is denied.  *Id.*  If the claimant cannot perform any past relevant work, then the ALJ must move to the fifth step, which requires consideration of the claimant's RFC to perform other substantial gainful work in the national economy in view of the claimant's age, education, and work experience.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The ALJ's Findings

---

[1]  Residual functional capacity is defined as that which an individual can still do despite his or her limitations.  20 C.F.R. §§ 404.1545, 416.945.

At step one of the disability analysis, the ALJ found Salgado "has not engaged in substantial gainful activity since December 2, 2016, the alleged onset date. . . ." (Tr. 16)  At step two, he found Salgado "has the following severe impairment: schizoaffective disorder, bipolar type. . . ."  (Tr. 16)  At step three, the ALJ found that Salgado "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments in 20 C.F.R., Part 404, Subpart P, Appendix 1. . . ."  (Tr. 17)

The ALJ then analyzed Salgado's residual functional capacity (RFC).  He found that "claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations:  She can perform 1-2 step tasks on a consistent, productive basis across a routine workday and week.  She can have limited social demand (with relation to the general public) in the workplace.  She would benefit from a more stable work setting."  (Tr. 18)

At step four, the ALJ found that Salgado has no past relevant work.  (Tr. 21)  At step five, the ALJ found, based on the testimony of the vocational expert, that considering her age, education, work experience, and residual functional capacity, Salgado could work as a bakery worker (DOT# 524.687-022) with 3,000 jobs nationally, a garment bagger (DOT# 920.687-018) with 5,000 jobs nationally, or a sorter (DOT# 734.687-042) with 2,500 jobs nationally.  (Tr. 22)

STANDARD OF REVIEW

To qualify for disability benefits the claimant must demonstrate, through medically acceptable clinical or laboratory standards, an inability to engage in substantial gainful activity due to a physical or mental impairment that can be expected to last for a continuous period of at least twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  "[A]n individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her] or

1  whether [she] would be hired if [she] applied for work."   42 U.S.C. §§ 423(d)(2)(A),

2  1382c(a)(3)(B).  The phrase "work which exists in the national economy" means "work which

3  exists in significant numbers either in the region where such individual lives or in several

4  regions of the country."   *Id.*   "The burden of establishing that there exists other work in

5  'significant numbers' lies with the Commissioner."  *Beltran v. Astrue*, 700 F.3d 386, 389 (9th

6  Cir. 2012).

7        The findings of the Commissioner are meant to be conclusive.  42 U.S.C. §§ 405(g),

8  1383(c)(3).  The decision to deny benefits "should be upheld unless it contains legal error or is

9  not supported by substantial evidence."   *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

10 Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept

11 as adequate to support a conclusion."  *Id.*  It is "more than a mere scintilla but less than a

12 preponderance." *Id.*

13       "Where evidence is susceptible to more than one rational interpretation, the

14 [Commissioner's] decision should be upheld."  *Orn*, 495 F.3d at 630.  "However, a reviewing

15 court must consider the entire record as a whole and may not affirm simply by isolating a

16 specific quantum of supporting evidence."  *Id.*

17

18       <u>Discussion</u>

19       Salgado argues first that the ALJ erred when he found that she could perform work that

20 exists in "significant numbers," which is required for a finding that the claimant is not disabled.

21 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).  She is correct.  The case will be remanded on this

22 issue.  The court does not reach Salgado's alternate arguments of error.

23       According to Salgado, courts in the Ninth Circuit have found that the term "significant

24 number" falls somewhere between 14,082 and 22,000 jobs nationally.  *See* (Doc. 19, p. 8)

25 (*citing Valencia v. Astrue*, 2013 WL 1209353, at *19 (N.D. Cal. 2013) for the proposition that

26 14,082 jobs nationally *were not* "significant" and *Boyd v. Colvin*, 2015 WL 2451185, at *9 (D.

27 Ariz. 2015) for the proposition that 22,000 jobs nationally *were* "significant.").  In this case,

28 however, the jobs identified by the ALJ total only 10,500 positions nationally. This, she asserts,

1   is not a significant number.  The Commissioner concedes that the ALJ's decision must be

2   reversed on this issue.  (Doc. 21, p. 6)

3       Salgado further argues that this action should be remanded for *payment of benefits*.

4   Citing *Garrison*, she asserts that remand for payment of benefits is permitted where "the record

5   has been fully developed and further administrative proceedings would serve no useful

6   purpose."  (Doc. 19, pp. 8-9)  (*citing Garrison v. Colvin*, 791 F.3d 995, 1020 (9th Cir. 2014))

7   She maintains that administrative proceedings would serve no useful purpose because, "It has

8   already been demonstrated that jobs do not exist in significant numbers."  (Doc. 19, pp. 8-9)

9   The court does not agree.

10      At the hearing, the ALJ asked the vocational expert, "Could you give me some examples

11  of jobs that she could sustain at any exertional level?"  (Tr. 72-73)  The vocational expert then

12  testified that Salgado could work as a bakery worker, garment bagger, or sorter.  *Id.*  He did not

13  state that these were the *only* jobs that Salgado could perform.  There may be others.  Moreover,

14  Salgado does not assert that the medical record contains an opinion of disability.  Accordingly,

15  this case should be remanded for further proceedings.  *See, e.g., Christopher H. v.*

16  *Commissioner of Social Security*,  2020 WL 3991425, *3 (W.D.Wash. 2020)  (Case was

17  remanded on an open record where the ALJ "erred in finding that there were a significant

18  number of jobs that Plaintiff could perform at step five" but the record "does not contain any

19  opinions from acceptable medical sources consistent with a finding of disability. . . .").

20      IT IS ORDERED that the final decision of the Commissioner is reversed and the matter

21  is remanded for further administrative proceedings.  The Commissioner's motion for remand

22  is GRANTED.  (Doc. 21)  The Clerk of the Court is directed to prepare a judgment and close

23  this case.

24      DATED this 11th day of September, 2020.

25

26

27  *Leslie A. Bowman*
    _____

28  Leslie A. Bowman
    United States Magistrate Judge